No. 22-2303

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

CONTAINER DIRECT INTERNATIONAL FURNITURE, INC., CONCEPTS DESIGN INNOVATION FURNITURE, INC., CONCEPTS DESIGN FURNITURE INC., COMPTOIR DES INDES and DAVID QUAKNINE,
Plaintiffs-Appellants,

*v.*

FISHER & BROYLES, LLP, ALASTAIR J. WARR,
Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 22-cv-01086
Honorable Magistrate Judge Jeffrey Cole, Judge Presiding

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

Amir R. Tahmassebi (#6287787)
Connor J. Whitting (#6331565)
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL 60134
630.262.9655
amir@konicekdillonlaw.com
connor@konicekdillonlaw.com
***Attorney for Plaintiffs-Appellants***

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ............................................................................................................1

I.   The District Court Erred in Dismissing Plaintiffs' Amended Complaint with Prejudice as Time-Barred

   A.   There Are Genuine Issues of Material Fact as to When Plaintiffs Knew or Should Have Known of Defendants' Alleged 2016 Legal Malpractice and Plaintiffs' Subsequent Injuries
   B.   Plaintiffs' Position That the District Court Erred in Dismissing Their Action with Prejudice Is Meritorious
       1.   There Are Genuine Issues of Material Fact as to Whether Plaintiffs Were Injured When They Incurred *Halo I* Defense Costs, Lost Settlement Monies and Subjection to a $3.5 Million Judgment
       2.   Plaintiffs' Cited Cases Aid Their Cause

II.  The Amended Complaint Plausibly Alleges Legal Malpractice Against the Defendants

III. The New CDI Plaintiffs Have Standing to Assert Legal Malpractice Against The Defendants

CONCLUSION ........................................................................................................9

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7),
FRAP RULE 32(g), FRAP RULE 32(c) .................................................................10

PROOF OF SERVICE ............................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Jackson Jordan, Inc. v. Leydig, Voit & Meyer*,
    158 Ill. 2d 240, 243 (1994)..................................................................................6

*Landmark Amer. Ins. Co. v. Deerfield Constr. Co.*,
    2016 U.S. Dist. LEXIS 66628, * 20 ...............................................................2, 3, 4

*Lucey v. Law Offices of Pretzel & Stouffer*,
    301 Ill. App. 3d 349, 351 (1st Dist. 1998).........................................................2

*Racquet v. Grant*,
    318 Ill. App. 3d 831, 832 (2nd Dist. 2000) ....................................................6, 7

*Suburban Real Estate Servs. v. Carlson*,
    2022 IL 126935, ¶ 3...........................................................................................5

# ARGUMENT

**I. The District Court Erred in Dismissing Plaintiffs' Amended Complaint with Prejudice as Time-Barred**

    **A. There Are Genuine Issues of Material Fact as to When Plaintiffs Knew or Should Have Known of Defendants' Alleged 2016 Legal Malpractice and Plaintiffs' Subsequent Injuries**

The Defendants argument on page 30 of its Response that "the district court correctly found" that "the undisputed facts show that plaintiffs knew or should have known of the alleged *2016* wrongdoing and resulting injury in September 2019 at the very latest" ignores the gravamen of Plaintiffs' argument on appeal; namely, that Plaintiffs' actual damages did not begin to accrue until the declaratory judgment action concluded on May 14, 2021. Up until that day, there was uncertainty as to whether Plaintiffs would sustain actual damages as a result of Defendants' alleged legal malpractice. Plaintiffs' actual damages remained uncertain until May 14, 2021, because the insurance company would have had to pay Plaintiffs *Halo I* defense costs, lost settlement contributions and $3.5 million adverse jury verdict if the court in the declaratory judgment action found in favor of Plaintiffs and against the insurance company.

Ultimately, the judge in the declaratory judgment action ruled in favor of the insurer and against the Plaintiffs. In doing so, the insurance company was not required to provide coverage to the Plaintiffs for the defense costs, lost settlement contributions or $3.5 million adverse jury verdict. Critically, it was not until the May 14, 2021, order that Plaintiffs' sustained actual damages; any alleged damages prior to the May 14, 2021, order were purely speculative in nature. *See Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill. App. 3d 349, 351 (1st Dist. 1998) ("damages are entirely speculative until a judgment is entered against a former client or he is forced to settle").

Moreover, as will be established in Section 2(a), *infra*, there are further genuine issues of material fact as to whether the Plaintiffs' defense costs, lost settlement contributions and $3.5 million adverse jury verdict alone constituted actual damages such that the limitations period began to run given the subsequent declaratory judgment action wherein Plaintiffs' insurer would have been responsible for Plaintiffs' defense costs, lost settlement contributions and $3.5 million adverse jury verdict had the outcome of said declaratory judgment action been in favor of Plaintiffs.

### B. Plaintiffs' Position That the District Court Erred in Dismissing Their Action with Prejudice Is Meritorious

#### 1. There Are Genuine Issues of Material Fact as to Whether Plaintiffs Were Injured When They Incurred *Halo I* Defense Costs, Lost Settlement Monies and Subjection to a $3.5 Million Judgment

First, Defendants' reliance on *Deerfield Construction* actually bolsters Plaintiffs' argument that the district court erred in dismissing the amended complaint with prejudice because the third-party plaintiff's legal malpractice claims in *Deerfield Construction* survived the defendant law firm's Rule 12(b)(6) motion to dismiss. *Landmark Amer. Ins. Co. v. Deerfield Constr. Co.*, 2016 U.S. Dist. LEXIS 66628, * 20.

In *Deerfield Construction*, Deerfield – a construction company – enlisted Arthur J. Gallagher Risk Management Services, Inc. ("AJG") as its insurance broker to procure on its behalf various insurance policies. *Id.* at * 3. Through AJG, Deerfield obtained a primary commercial automobile liability policy with liability limits of $1 million. *Id.* AJG also obtained a commercial excess liability policy for Deerfield from Landmark American Insurance Company ("Landmark") with liability limits of $10 million. *Id.*

Later, an agent of Deerfield's was involved in an automobile accident with a third party driver. *Id.* Deerfield notified the primary automobile insurer and AJG of the accident. *Id.* Ultimately, the third party driver brought suit against Deerfield. *Id.* Deerfield notified the primary insurer and AJG of the litigation, but neither Deerfield, the primary insurer nor AJG notified Landmark of the litigation. *Id.* The primary insurer accepted Deerfield's defense and retained Meachum, Starck, Boyle & Trafman ("MSBT") to represent Deerfield in the personal injury lawsuit. *Id.* at * 4. When asked what would happen if a judgment was entered that exceeded the limits of the primary policy, an attorney at MSBT advised Deerfield that it "did not have to worry because they were covered under the Landmark Policy for any amount in excess of $1 million and up to $10 million." *Id.* The case proceeded to trial.

At trial, the jury entered a verdict of $2,368,000 against Deerfield, which was later reduced to $2,339,827. *Id.* at * 5. After the verdict was entered, Landmark refused to indemnify Deerfield for the portion of the judgment exceeding the primary insurer's $1 million policy limit, arguing that it had not been provided timely notice as required in its insurance contract. *Id.* Subsequently, Landmark filed an action against Deerfield seeking a declaratory judgment that Deerfield's failure to timely notify it of the personal injury case entitled Landmark to withhold payment on the excess policy. *Id.* Deerfield sought leave to file a third-party complaint against MSBT for professional negligence. *Id.* at * 6.

MSBT moved to dismiss Deerfield's legal malpractice claim pursuant to Rule 12(b)(6) as premature. *Id.* Specifically, MSBT argued Deerfield's malpractice claim should be dismissed as premature because Deerfield had not yet been injured. *Id.* at * 18. According to MSBT, "the claimed injury is that Deerfield … *might* not be able to enforce the Landmark policy and so *might*

3

have to pay part of the [personal injury] verdict." *Id.* In MSBT's view, this would "not be an actual injury unless and until, at the very least, there is a judgment of no coverage under the Landmark policy." *Id.* In response, Deerfield asserted that it already suffered damages by having an adverse judgment entered against it in the personal injury case. *Id.* MSBT replied that "the Malpractice Claim is not about the [personal injury] Verdict – it is about whether MSBT caused through professional negligence the loss of excess insurance coverage for the [personal injury] Verdict." *Id.* at * 18-19.

In denying MSBT's motion to dismiss Deerfield's malpractice claim, the district court determined that Deerfield sufficiently alleged that MSBT's malpractice "caused *both* an unnecessarily high adverse judgment in the [personal injury] case *and* the potential denial of coverage by Landmark." *Id.* The district court held that it could "reasonably infer" that MSBT's alleged failures caused Deerfield to sustain actual damages. *Id.* at * 20. Although the district court noted that the "mere fact that Deerfield also seeks to have Landmark pay the judgment does not render the injury hypothetical" and that "the injury had occurred, and it will remain until some other party *actually* pays the judgment" it is important to note that the district court also recognized that Deerfield's allegations of actual damages arose from both damages it sustained in the personal injury case *and* the potential denial of coverage by Landmark.

Here, it is the Plaintiffs' contention that their actual damages did not begin to accrue until the May 14, 2021 adverse order. The district court in *Deerfield Construction* tacitly acknowledged that such a loss constitutes actual damages for purposes of a legal malpractice action. *Deerfield Construction* at * 19-20. Further, in this case, the Plaintiffs – unlike third-party plaintiff Deerfield – are not asserting they sustained actual damages both as a result of Defendants' conduct in the

4

underlying *Halo I* litigation *and* the denial of coverage in the May 14, 2021, adverse order. Instead, Plaintiffs are merely alleging that the Defendants' negligence in the underlying action did not proximately cause Plaintiffs to sustain actual damages until the May 14, 2021, adverse order determined that Intact had no duty to indemnify Plaintiffs. Moreover, and of great import, the *Deerfield Construction* case Defendants rely on was a 2016 opinion that preceded the Illinois Supreme Court's *Suburban Real Estate* opinion that clearly defined what an "injury" is for purposes of a legal malpractice action. *Suburban Real Estate Servs. v. Carlson*, 2022 IL 126935.

As was discussed in great detail in the opening brief and *infra*, like the plaintiff in *Suburban Real Estate*, Plaintiffs suffered no pecuniary loss directly attributable to Defendants' neglect <u>prior</u> to the May 14, 2021 adverse judgment. Although Plaintiffs may have been alerted of Defendants' alleged malpractice in March 2019, September 2019, or February 2020, "the possibility of damages would not be actionable unless and until the [Intact] litigation ended adversely to [P]laintiffs." See *Suburban Real Estate* at ¶ 37. It was not until then that Plaintiffs sustained actual damages that they would not otherwise have had but for Defendants' alleged malpractice. Had the Intact litigation resulted in an outcome favorable to Plaintiffs, no cause of action for legal malpractice would have accrued. See *Id.*

### 2. Plaintiffs' Cited Cases Aid Their Cause

Contrary to Defendants' assertion, *Lucey*, does not support the district court's ruling. Here, Plaintiffs – like the plaintiff in *Lucey* – could not properly allege damages against Defendants until Judge Walker's May 14, 2021, order determined that Intact had no duty to provide coverage to Plaintiffs in the infringement action. Because either Intact and the Plaintiffs could have settled the declaratory judgment action or Judge Walker could have determined that

5

Intact did have a duty to provide coverage, any legal malpractice action Plaintiffs might have brought against Defendants before settlement or the May 14, 2021 order would have been premature as there was still a chance that Defendants' legal malpractice might not have caused Plaintiffs to sustain actual damages. As such, Plaintiffs' legal malpractice action did not accrue until May 14, 2021.

Plaintiffs, like the plaintiff in *Suburban Real Estate*, did not have actual damages attributable to Defendants' legal malpractice until the May 14, 2021 order was entered. Defendants' argument that the underlying adverse judgment giving rise to Plaintiffs' legal malpractice action against Defendants occurred on January 19, 2018, ignores the allegations in Plaintiffs' amended complaint that it was not until the May 14, 2021 order that Plaintiffs sustained actual damages.

Plaintiffs rely on *Jackson* because it established the principle that dismissal pursuant to a statute of limitations defense is improper when the facts could support more than one conclusion as to when a plaintiff is on notice of his legal malpractice action. *Jackson Jordan, Inc. v. Leydig, Voit & Meyer*, 158 Ill. 2d 240, 251 (1994). Here, there are numerous dates that could support more than one conclusion as to when Plaintiffs might have had enough information to determine that Defendants' alleged malpractice proximately caused them to sustain actual damages. Because some of those dates are within two years from the filing of the instant action, dismissal is improper pursuant to *Jackson.*

Defendants concede that *Racquet* stands for the proposition that entry of an adverse judgment in an underlying action might not always put a plaintiff on notice that legal malpractice has occurred. *Racquet v. Grant*, 318 Ill. App. 3d 831 (2nd Dist. 2000). In this case, Plaintiffs have

6

alleged that the May 14, 2021, order determining that Intact had no duty do indemnify Plaintiffs was the adverse judgment order that put Plaintiffs on notice of their legal malpractice claims against Defendants. Thus, pursuant to *Racquet*, it follows that there is, at the very least, a genuine issue of material fact as to whether the May 14, 2021, adverse judgment put Plaintiffs on notice of their claims against Defendants.

**II. The Amended Complaint Plausibly Alleges Legal Malpractice Against the Defendants**

Defendants' argument that the amended complaint "fails to allege facts sufficient to support a legal malpractice because CDI did not retain Defendants to assess or pursue insurance coverage for *Halo I* and had nothing to do with plaintiff's failure to provide timely notice to Intact during the 17 months *Halo I* was pending prior to their retention" ignores the well-pled allegations raised in Plaintiffs' amended complaint. For example, in paragraph ten of the amended complaint, Plaintiffs allege they conveyed to Defendants that they had insurance coverage through Intact that might cover defense costs and indemnity claims for the *Halo I* litigation. (Doc. 20, ¶ 10). Plaintiffs further allege that Defendants neither requested a copy of the policy nor did they advise Plaintiffs to submit a claim to the insurance carrier. *Id*. According to Plaintiffs, Defendants never once advised Plaintiffs to submit a claim to Intact even though Defendants were aware that there may have been insurance coverage available to Plaintiffs. *Id.* at ¶ 13.

The above allegations, taken as true, allow for one to infer that Defendants deviated from the standard of care they owed Plaintiffs. Defendants' argument on page 47 that "the August 16, 2016, Engagement Letter referenced in the Amended Complaint establishes that Defendants were only retained to litigate/settle the *Halo I* complaint for CDI" ignores the inference Plaintiffs

7

amended complaint allows the trier of fact finder to draw; namely, that Defendants' failure to advise Plaintiffs' to submit a claim to its insurance carrier directly affected Defendants' ability to properly litigate and settle the *Halo I* litigation on behalf of Plaintiffs. *See* Doc. 20, ¶¶ 15-17.

Ultimately, the issue of whether the Defendants were negligent in failing to advise Plaintiffs to submit a claim to their carrier is one that must be resolved by the trier of fact after hearing expert witness testimony. However, for now, a plain-reading of the allegations pled in the amended complaint allow for one to infer that Defendants might, at the very least, be liable for having failed to advise Plaintiffs to submit a claim to their carrier while they represented Plaintiffs in the *Halo I* litigation.

**III. The New CDI Plaintiffs Have Standing to Assert Legal Malpractice Against the Defendants**

Plaintiffs have standing to bring their claims against Defendants pursuant to the representation agreement effectuated between them and Defendants. The representation agreement states in pertinent part:

> Our engagement as counsel to CDI Furniture, as well as its direct and indirect affiliates (collectively, the "Company"), will include representation against the lawsuit styled Halo Creative & Design et. al. v. CDI Furniture, et. al, Case No. 1:14-cv-08196, in the Northern District of Illinois …

Dkt. 24-4, p. 1.

Although Comptoir Des Indes Inc., CDI International, CDI Furniture and David Quaknine were the only defendants in the underlying action that gave rise to this legal malpractice lawsuit, Plaintiffs Concepts Direct International Furniture, Inc., Concepts Design Innovation Furniture, Inc., and Concepts Design Furniture, Inc. can reasonably said to be "direct and indirect affiliates" of CDI Furniture. Moreover, the additional entities are alleged to have purchased all of the viable

8

assets of the prior entities. (Doc. 20, ¶ 2). Therefore, Defendants' argument that no "attorney-client relationship existed between Defendants and the new CDI entities" ignores the plain and ordinary language of its representation agreement. As a result, Defendants' standing argument is without merit.

## CONCLUSION

WHEREFORE, Plaintiffs-Appellants, respectfully request this Court **REVERSE** the magistrate judge's June 23, 2022 order granting Defendants' motion to dismiss Plaintiffs' amended complaint with prejudice and to remand this matter to the district court for further proceedings.

Dated:      January 23, 2023                          Respectfully submitted,


                                                      /s/ Amir R. Tahmassebi
                                                      Attorney for Plaintiffs-Appellants


Amir R. Tahmassebi, #6287787
KONICEK & DILLON, P.C.
21 West State Street
Geneva, IL 60134
(630) 262-9655
amir@konicekdillonlaw.com

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(a)(7), FRAP RULE 32(g) and FRAP RULE 32(c)

1.　　This Brief complies with the type-volume limitations of F.R.A.P. Rule 32(a)(7)(B), excluding the parts of the Brief exempted by F.R.A.P. 32(f), because it contains 2,337 words as calculated by the word-counting feature of Microsoft Office 365.

2.　　This Brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type-style requirements of F.R.A.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Palatino Linotype 11-point font.

Dated:  January 23, 2023　　　　　　　　/s/ Amir R. Tahmassebi
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs-Appellants

Amir R. Tahmassebi, #6287787
KONICEK & DILLON, P.C.
21 West State Street
Geneva, IL  60134
(630) 262-9655
amir@konicekdillonlaw.com

## PROOF OF SERVICE

I hereby certify that on **January 23, 2023**, I electronically filed with the Seventh Circuit Court of Appeals the foregoing **REPLY BRIEF OF PLAINTIFFS-APPELLANTS,** with this Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated: January 23, 2023    /s/ Amir R. Tahmassebi
                           Attorney for Plaintiffs-Appellants

Amir R. Tahmassebi, #6287787
KONICEK & DILLON, P.C.
21 West State Street
Geneva, IL  60134
(630) 262-9655
amir@konicekdillonlaw.com