> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2023
Decided March 31, 2023

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 22-2303

| | |
|---|---|
| CONCEPTS DESIGN FURNITURE, INC., et al., <br>     *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 22-cv-01086 |
| FISHERBROYLES, LLP and ALASTAIR J. WARR, <br>     *Defendants-Appellees*. | Jeffrey Cole, <br> *Magistrate Judge*. |

**O R D E R**

David Quaknine and several of his companies sued their former attorney and his law firm for alleged malpractice connected to a 2014 suit. The district court granted the defendants' motion to dismiss. It ruled that the two-year limitations period, which at

the latest began to run in September 2019, expired before the plaintiffs sued in December 2021. Because the suit is indeed untimely, we affirm.

## I

We begin by reciting the well-pleaded facts in the complaint. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). We also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

David Quaknine and several of his companies (collectively Comptoir), which did business from Quebec, Canada, were sued for intellectual-property infringement in 2014. Over a year later, Comptoir hired Alastair Warr and his law firm to negotiate a settlement or, failing that, represent Comptoir in court. Comptoir told Warr that it had a policy with Intact Insurance Company that potentially could cover defense costs and indemnify it for claims. Warr did not advise Comptoir to submit a claim to Intact.

The lawsuit did not go well for Comptoir, but it continued to retain Warr. About four months after Warr began his relationship with Comptoir, he changed law firms, to FisherBroyles, LLP, which Comptoir hired. Warr still did not advise Comptoir to submit a claim to Intact; to the contrary, the disclosures in the suit under Rule 26(a)(1)(A)(iv) of the Federal Rules of Civil Procedure stated that Comptoir had "no insurance agreement." A jury eventually found against Comptoir, assessing it over three million dollars in damages. Comptoir was also permanently enjoined from certain operations and advertising. In February 2018, Comptoir—through other counsel—told Intact about the attorney's fees. This was the first time Intact learned of the intellectual-property suit.

Comptoir reorganized after the adverse judgment. First it filed for bankruptcy protection. And Quaknine created two new entities—also plaintiffs here—which purchased Comptoir's assets and assumed some of its liabilities. The bankruptcy court declared Comptoir bankrupt and appears to have discharged the judgment debt from the 2014 litigation.

Comptoir demanded insurance coverage for its defense fees from the 2014 suit, and Intact denied coverage on September 10, 2019. (Comptoir also demanded fees for another suit that we need not discuss.) When it demanded coverage, Comptoir sent to Intact (apparently for the first time) a copy of the complaint in the 2014 suit. In denying

Comptoir's demand in September 2019, Intact gave three reasons: First, the suit against Comptoir was not covered under the policy. Second, because Comptoir "failed to promptly notify Intact of the [2014] Complaint and to immediately upon receipt thereof, deliver to Intact a copy of the Complaint," it violated the policy and forfeited its right to and was "time barred" from reimbursement. Third, Comptoir listed its defense fees "as amounts due to creditors," which implied that only the bankruptcy trustee could collect them.

Intact followed up with a suit seeking a declaration in Cook County Circuit Court that it was not obligated to pay defense fees or indemnify Comptoir. Comptoir answered and counterclaimed in that suit on February 13, 2020, asserting that Intact had a duty to pay defense fees. On May 14, 2021, the state court ruled for Intact. It explained that Comptoir failed to notify Intact "as soon as" it "became aware" of the 2014 suit, as the policy required, and thus "forfeited all rights to coverage under the [p]olicy." *Intact Ins. Co. v. Comptoir Des Indes, Inc.*, No. 2019CH13088 at 7 (Ill. Cir. Ct. May 14, 2021) (emphasis removed). It also ruled that Comptoir made its defense-fees claim outside the three-year statute of limitations applicable under Quebec law. *Id.* Thus, Comptoir's "complaint and subsequent demand for reimbursement of fees" was "time barred." *Id.*

On December 17, 2021, over two years after Intact's September 2019 denial of Comptoir's demand for insurance coverage, Comptoir sued Warr and FisherBroyles for legal malpractice. Comptoir filed in Illinois state court, alleging that the defendants negligently failed to advise it to file a timely insurance claim with Intact. Had it filed a timely claim with Intact, Comptoir asserted, Intact may have covered its legal fees and settlement funds, which could have allowed it to avoid the judgment and bankruptcy. The defendants removed the suit to federal court, and Comptoir amended its complaint to add as plaintiffs the new entities created during the bankruptcy proceedings. The parties consented to proceed before a magistrate judge. (The consent form was signed before the complaint was amended, but the panel can infer from the new entities' conduct that they also consented. *See Roell v. Withrow*, 538 U.S. 580, 590 (2003).)

The district court granted Warr and FisherBroyles's motion to dismiss the suit as untimely under Illinois law. It reasoned that Comptoir reasonably should have known of the alleged injury by, at the latest, September 10, 2019—the date Intact sent the letter denying coverage. Comptoir had two years to sue, *see* ILCS 5/13-214.3(b), but it waited until December 17, 2021, more than two years later. Because the court found that the suit was untimely, it did not consider the defendants' other arguments.

## II

On appeal, Comptoir argues that the district court erroneously found that the malpractice action accrued in September 2019. Comptoir asserts that it was not "injured" (and thus could not have sued) until after the declaratory judgment on May 14, 2021. Even if it was harmed earlier, Comptoir argues next, the two-year clock did not start until it "knew or should have known" of its injury, and in its view this date depends on the resolution of disputed facts; the date might be September 2019, February 2020 (when it counterclaimed in the declaratory suit), or May 14, 2021. Last, it adds that the district court should have granted it leave to amend its complaint.

Before reaching these arguments, we confirm that this case—removed from Illinois court to federal court based on the diversity of the parties' citizenship—has diverse parties. *See* 28 U.S.C. §§ 1332, 1441. The plaintiff corporations are citizens of, and have their principal places of business in, Quebec, Canada. *See* 28 U.S.C. § 1332(c)(1). Quaknine—the only person on the plaintiff side of the ledger—is also a citizen of Quebec, Canada. The defendants' citizenship is diverse from the plaintiffs'. FisherBroyles consists of two partners: Broyles Law Firm, P.C., and Fisher Legal Services, P.C., both of which are corporations for purposes of diversity jurisdiction. *See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 739 (7th Cir. 2004). Broyles Law Firm is incorporated in, and has its principal place of business in, Georgia. Fisher Legal Services is incorporated in Texas with its principal place of business in Puerto Rico. Warr is a citizen of Indiana. Thus, these parties are diverse. Finally, the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(a). Jurisdiction is therefore secure.

On the merits, both parties accept that Illinois's two-year statute of limitations for malpractice suits applies to this case. *See* ILCS 5/13-214.3(b). They also do not dispute that the Illinois statute of limitations incorporates the so-called "discovery" rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630–31 (Ill. 1994); *Snyder v. Heidelberger*, 953 N.E.2d 415, 418 (Ill. 2011).

As stated above, Comptoir first argues that it was not "injured" until it received a declaratory judgment in Intact's suit. The injury in a malpractice action is a pecuniary one, so a plaintiff is not injured until the plaintiff suffers "a loss for which monetary damages may be sought." *See Suburban Real Est. Servs., Inc. v. Carlson*, 193 N.E.3d 1187,

1191 (Ill. 2022). To determine the date of injury, Comptoir relies heavily on the oft-cited principle that a malpractice claim against a lawyer for bungling litigation "will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which" the plaintiff "has become entangled due to the purportedly negligent advice" of the plaintiff's attorney. *Blue Water Partners, Inc., v. Mason*, 975 N.E.2d 284, 300 (Ill. App. Ct. 2012) (quoting *Lucey v. Law Offs. of Pretzel & Stouffer*, *Chartered*, 703 N.E.2d 473, 479 (Ill. App. Ct. 1998)). This is generally because a plaintiff will not know whether an attorney's malpractice led to damages until the underlying litigation ends. *See Suburban Real Est. Servs.*, 193 N.E.3d at 1192.

But this argument fails because, as the district court observed, Comptoir's claim is not "based on the mishandling of litigation." *Cf. Praxair, Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1032 (7th Cir. 2000). Rather, its claim arises out of the defendants' alleged failure to advise Comptoir to file a timely claim with its insurer. The pecuniary injuries from this alleged malpractice, according to Comptoir's own complaint, included the defense fees that Intact refused to cover in September 2019, the judgment in the 2014 suit, and the resulting bankruptcy. These damages existed before—and regardless of— the outcome of the declaratory-judgment suit. Comptoir contends that the district court did not find that its injuries occurred before the declaratory judgment. But the court did, and rightly so, stating, "win or lose, Comptoir suffered damages long before the loss of the case."

Comptoir next argues that even if it did suffer a pecuniary injury before the declaratory judgment, *when* it should have known of the injury is a disputed fact issue. We disagree. It admits that the letter from Intact in September 2019, stating that Intact was denying coverage, could have alerted it to a malpractice claim against its attorneys for failing to advise it to file a claim. We reject Comptoir's contention that, because the letter listed three reasons for the denial, it did not put Comptoir on adequate notice of its injury. It is undisputed that one explicit reason for Intact's denial was that Comptoir "failed to promptly notify Intact of the Complaint and to immediately upon receipt thereof, deliver to Intact a copy of the complaint," and that the policy stated that failure to notify meant a forfeiture of "rights to compensation." This statement adequately alerted Comptoir to "an injury that may have been caused by wrongful conduct" of its attorney that required it to "investigate further." *See Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1036–37 (Ill. 2012). Thus, the district court rightly ruled that Comptoir reasonably should have known of its injury in September 2019.

Comptoir responds that the evidence could support a finding that notice of its injury occurred on two other dates. First, it argues that a better date for when it discovered its injuries is February 2020, when it knew enough to counterclaim in Intact's declaratory-judgment action. Second, it suggests that it learned of its injuries in May 2021, the date of judgment. Those dates may be when Comptoir gained better certainty of its injury. But certainty "is not a necessary condition to trigger the running of the statute of limitations." *See Blue Water Partners, Inc.*, 975 N.E.2d. at 298. Otherwise, even the declaratory judgment is not sufficient to start the clock because Comptoir might have appealed the judgment, putting it in doubt. Further, Comptoir's view wrongly implies that the limitations clock started only if Intact made a discretionary decision to sue for declaratory judgment. But all it takes to allege malpractice is a breach of duty that resulted in an injury. *See N. Ill. Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 106 (Ill. 2005). Once a malpractice plaintiff is aware of that injury, the plaintiff is not required to wait for a court's judgment certifying that the plaintiff's attorneys erred. Thus, the limitations clock for Comptoir started when it reasonably should have known of the alleged malpractice, *Jackson Jordan, Inc.*, 633 N.E.2d at 630–31, and that occurred at the latest when Intact sent its letter in September 2019 denying coverage to Comptoir.

Comptoir's last argument is that the district court should have granted it leave to amend its complaint. Comptoir did not move to amend in the district court, let alone submit a proposed amended complaint or explain how it might correct deficiencies. *See Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017). Regardless, the argument is meritless. Granted, the statute of limitations is an affirmative defense, and Comptoir was not required to anticipate the defense in its complaint. Even so, dismissal on this ground without the chance to amend was proper because Comptoir alleged facts and relied on documents that establish the defense. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). As already discussed, Comptoir accepts that Intact denied coverage in September 2019, starting the two-year clock that expired before it sued in December 2021. Any amendment would be "futile" because the claim is barred for reasons that an amendment could not cure. *See Doermer*, 847 F.3d at 528.

AFFIRMED